BIGBEE & WARRIOR RIVERS PACKET CO. v. MOBILE & O. R. CO.[1]

(Circuit Court, S. D. Alabama. December 30, 1893.)

1. INTERSTATE COMMERCE ACT — DISCRIMINATION — PLACE OF ORIGINATION OF GOODS.

All goods offered for shipment at a certain point must be carried at the established rate for such goods from such point, regardless of the place where they originated.

[1] Reported by Peter J. Hamilton, Esq., of the Mobile bar.

2. SAME—TRAFFIC AGREEMENTS.
  The fact that cotton is offered for shipment at Mobile for New Orleans by a packet company which had carried it from Demopolis does not make a case of dissimilarity of circumstances or conditions allowing the carrier which had no line to Demopolis to charge more than the established rate between Mobile and New Orleans, regardless of its agreements with other roads as to cotton so received.

At Law.  On demurrer to answer.

Pillans, Torrey & Hanaw, for relator.

E. L. Russell, for respondent.

TOULMIN, District Judge, sitting as Circuit Judge.  The facts in this case, as stated and admitted in the pleadings, are that the relator is a corporation of the state of Alabama, and is engaged in transporting cotton and other merchandise upon its vessels plying on the Bigbee river in the state of Alabama; that the respondent is a common carrier of goods, engaged in interstate commerce, and over its line and connecting lines undertakes to carry, as such common carrier, goods, including compressed cotton bales, from Mobile, in the state of Alabama, to New Orleans, in the state of Louisiana; that respondent, as such carrier, has for a long time, and does yet carry and transport compressed cotton bales from Mobile to New Orleans at and for the price of 80 cents a bale to ship's side at New Orleans, and the 80 cents a bale is the usual and customary rate charged from Mobile to ship's side at New Orleans on compressed cotton.  Relator, having in the city of Mobile 400 bales of compressed cotton which it had brought on one of its boats from Demopolis, Ala., for reshipment to New Orleans, delivered the same to respondent at its freight sheds in Mobile, the place provided for receiving such goods for carriage, and requested and demanded of respondent that said cotton be shipped as customary, and at said customary rate of 80 cents a bale, and tendered the freight money in advance to respondent.  Respondent refused to transport the cotton, as it was requested to do, at the rate of 80 cents a bale, and demanded $1.25 a bale.  One dollar and a quarter a bale was and is a higher rate than is charged by respondent to others and the general public for transporting cotton of like kind and condition from Mobile to New Orleans.  Respondent sets up in justification of its refusal to receive and transport said cotton at 80 cents a bale, and of its demand of $1.25 a bale, substantial dissimilarity of circumstances and conditions from those under which other cotton is offered by other shippers at Mobile, and received by respondent, to be transported to New Orleans. The substantial dissimilarity of circumstances and conditions as averred by respondent is the fact that the relator was engaged in transporting cotton and other merchandise upon its vessels on the Bigbee river, and that this cotton was received by the relator at Demopolis, Ala., and was transported upon its vessels to Mobile for the purpose of reshipping the same over respondent's line, or some other line of railroad, to New Orleans.  And respondent further says, in justification, that it had agreed with the Louisville

& Nashville Railroad Company, and certain other railroad companies within a specified or given territory, for the purpose of maintaining a uniform rate upon all shipments of cotton from Demopolis and some other points in Alabama, in vessels plying the Alabama rivers, and received at Mobile to be reshipped and transported to New Orleans, that it would charge $1.25 a bale for such transportation, and that the 400 bales of cotton in question were so received from Demopolis. Respondent, in short, says that it refused to receive and transport said cotton, as stated by relator, (1) because it was not offered under like circumstances and conditions as an ordinary or usual shipment of cotton over its line and connecting lines from Mobile to New Orleans; and (2) because of the agreement referred to.

The interstate commerce law, among other things, provides that it shall be unlawful for any common carrier, subject to the provisions of the law, to charge, demand, collect, or receive from any person or persons a greater or less compensation for any services rendered or to be rendered in the transportation of property than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like contemporaneous service in the transportation of a like kind of traffic, under substantially like circumstances and conditions (section 2, "Act to Regulate Commerce;" 24 Stat. 379); and by section 3 of the act it is provided that it shall be unlawful for any common carrier, subject to the provisions of the act, to make or give any undue or unreasonable preference or advantage to any particular person or locality, in any respect whatsoever, or to subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

It is contended on part of respondent that the proposed shipment of the cotton in question was not as an original shipment from Mobile to New Orleans, but was shipment from Demopolis, Ala., through Mobile to New Orleans. The cotton was shipped from Demopolis to Mobile to be forwarded to New Orleans, but was not shipped by through bill of lading from Demopolis, via Mobile, to New Orleans. It was shipped from Demopolis to Mobile, consigned to relator at Mobile, to be reshipped at Mobile. It was tendered by relator to respondent, to be shipped over its line and connections to New Orleans, and a bill of lading therefor demanded of respondent. The fact is that all cotton shipped from Mobile to New Orleans by any person comes from some point outside of Mobile. What substantial dissimilarity in circumstances and conditions is there, then, between a shipment of cotton from Mobile to New Orleans by a person who has received the cotton from Tuskaloosa, or any other part of Alabama, for illustration, and a shipment of cotton from Mobile to New Orleans by a person who has received it from Demopolis, Ala.? There is a dissimilarity in the circumstance that one lot of cotton came from one point and the other lot from another point. But this is not a substantial dissimilarity, such as is contemplated by the law, and it is not every dissimilarity of circumstance or condition that justifies a

dissimilarity of rates. "That some dissimilar conditions justify dissimilarity in rates is true. That remote dissimilarities of condition justify any dissimilarities which the carrier chooses to make is not true." Interstate Commerce Commission v. Texas & Pac. Ry. Co., 6 C. C. A. 653, 57 Fed. 955. The circumstances and conditions to be considered are those which bear upon the transportation by the particular carrier, and under which such transportation is conducted. They must have direct bearing upon the traffic over the line on which the discrimination is made. The dissimilarity of circumstances and conditions set up by respondent in justification of its claim is not the outcome of competition by water routes or any other competitive railroad line not subject to the interstate commerce act. Respondent's position on this point cannot be sustained. I am unable to see that the circumstance that the cotton in question came from Demopolis to Mobile, to be reshipped thence to New Orleans, has any direct bearing upon the traffic over respondent's line to New Orleans. I am unable to see how the fact or circumstance that the cotton came from Demopolis can in any way affect transportation or traffic over respondent's line and connecting lines to New Orleans. The respondent has no line to Demopolis, Ala., and no connecting line or joint traffic arrangement with the relator, the Bigbee & Warrior Rivers Packet Company, and hence there is no question of a proportion of rates involved in the case.

It is further contended by the respondent that to grant to the relator the right to ship its cotton from Mobile to New Orleans at the same rate given to other shippers of cotton from the one point to the other at what the counsel calls "the Mobile rate of 80 cents on a bale," would give to every town located on the Alabama rivers equal facilities and advantages with those of Mobile. That is true, and that is what I understand the interstate commerce act provides for and is designed to protect, when it says that it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect whatsoever, or to subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. I consider that any person who receives cotton at Mobile from Demopolis, or any particular point on the Alabama rivers, whether it comes by boat, by wagon, or any other way, and desires to ship it from Mobile to New Orleans by respondent's railroad line, is as much entitled to have it shipped at the Mobile rate of 80 cents a bale as any other person is who receives his cotton from any other point, or who may have bought it at Mobile. To deny the former this right while it is given to the latter would, in my judgment, be subjecting him and the locality from which he got his cotton to an undue and unreasonable disadvantage, and would be violative of the act to regulate commerce. Crews v. Railroad Co., 1 Interst. Commerce Com. R. 401. The United States supreme court in the case of Railroad Co. v. Goodridge, 149 U. S. 680, 13 Sup. Ct. 970, say, in substance, that it was designed by the act to

regulate commerce "to cut up by the roots the entire system of rebates and discriminations in favor of particular localities; that carriers are bound to deal fairly with the public, to extend them reasonable facilities for the transportation of their persons and property, and to put all their patrons upon an absolute equality." Relative to the agreement set up in the defense I will say that "if the respondent is acting, or claims to act, under the compulsion of circumstances and conditions of its own creation or connivance in the making of an exceptional rate, then these will not avail it" (Business Men's Ass'n of Minnesota v. Chicago, St. P., M. & O. R. Co., 2 Interst. Commerce Com. R. 52); and, further, that, in my opinion, such an agreement contravenes the act to regulate commerce. My conclusion is that no justification has been shown by the respondent for the discrimination complained of, and that relator's demurrers to respondent's answer should be sustained; and it is so ordered.